Danny STUTTS, Plaintiff,

v.

SEARS, ROEBUCK & CO., and Gene Kendrick, Defendants.

No. CV 92–B–2709–NW.

United States District Court,
N.D. Alabama,
Northwestern Division.

March 29, 1994.

James Wilson Mitchell, Colbeck Yates Mitchell & Bernauer, Florence, AL, for plaintiff.

William F. Gardner, William K. Thomas and Samuel D. Payne, Cabaniss Johnston Gardner Dumas & O'Neal, Birmingham, AL, for defendants.

### MEMORANDUM OPINION

BLACKBURN, District Judge.

Currently before the court is the defendants' Motion for Summary Judgment, filed on September 30, 1993. After reviewing the record and the submissions of the parties, the court is of the opinion that this motion is due to be granted.

### FACTUAL BACKGROUND [1]

This case arises from an employment dispute. Plaintiff began working for Sears, Roebuck & Company ("Sears") in November of 1970. [Stutts Deposition, volume I, p. 18; Exhibit I to Volume I of Stutts Deposition in

---

1. Because this case is before the court on the defendants' motion for summary judgment, the court will view the facts in the light most favorable to the plaintiff.

2. Citations to depositions and to other exhibits are taken from the parties' submissions of evidence in support of or in opposition to defendants' Motion for Summary Judgment.

3. The paragraph above the applicant's signature on the application for employment contained the

Defendants' Evidence Submitted in Support of Motion for Summary Judgment].[2] At the time he applied for a job with Sears, plaintiff signed an acknowledgement of his status as an employee at will, which further stated that no one other than a president or vice president could alter that status.[3] [Defendants' Exhibit I to Stutts Depo. I]. Plaintiff stated that he understood that he could be terminated at any time for any reason and that he could quit at any time for any reason. [Stutts Depo. I, pp. 73–74]. After changing departments several times with small raises accompanying the changes, plaintiff became the manager of the automotive department in 1972. [Stutts Depo. I, pp. 20–23].

A new store opened in Florence in 1977, plaintiff applied for a position, and he began work as one of the Division Managers in Automotive at the Florence store. [Stutts Depo. I, pp. 40, 43]. Plaintiff was later promoted to Auto Center Manager with responsibility over the whole automotive department. [Stutts Depo. I, p. 47]. He did not receive a concomitant increase in pay. [Stutts Depo. I, p. 52].

In 1985, due to a reorganization in the Florence store, plaintiff had the choice of accepting more managerial responsibility and potentially more hours with no increase in pay or leaving management and becoming a commissioned salesman. [Stutts Depo. I, pp. 53–59]. He chose to take the job as a commissioned salesman. [Stutts Depo. I, p. 59].

In 1985, plaintiff's compensation was changed from a base rate of $7.56 to a base rate $8.42, with a concurrent reduction in the premium sales level. [Defendants' Exhibit 3 to Stutts Depo. I]. In 1989, plaintiff's compensation was again changed, with an increase in the base rate from $8.42 to $8.50 and an increase in the premium sales level.

---

following language: "I agree to conform to the rules and regulations of Sears, Roebuck & Co. and my employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of either the company or myself. I understand that no unit manager or representative of Sears, Roebuck & Co., other than the president or vice-president of the Company, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing."

[Defendants' Exhibit 4 to Stutts Depo. I]. Above plaintiff's signature on each of the forms acknowledging the change in pay is a statement that "[t]he Premium Sales Level is subject to change each January, when the annual update of the Commission Compensation Plan is completed." [Defendants' Exhibits 3 & 4 to Stutts Depo. I].

In 1992, Sears attempted to reduce payroll costs nationwide, and one of the means to do that was to offer all workers who had at least one year of service and whose pay would likely be reduced by ten percent or more under a new compensation scheme the choice of participating in a Voluntary Big Ticket Severance Package or taking a significant cut in pay. [Cook Affidavit, ¶¶ 22, 23]. The Voluntary Severance Package was a combination of severance pay and residual benefits tied to voluntary severance. Plaintiff was offered this choice. [Stutts Depo. II, p. 91]. Plaintiff elected to stay, and his compensation was reduced from a base rate of $8.50 per hour to a base rate of $3.50 per hour, with a concurrent reduction in the number of items whose sale would generate a commission for plaintiff. [Stutts EEOC Affidavit, Defendants' Exhibit 3 to Stutts Depo. II].[4] After that reduction, plaintiff filed a Charge of Discrimination with the EEOC against Sears in June, 1992, charging discrimination based on age. [Defendants' Exhibit 2 to Stutts Depo. II]. This lawsuit followed, alleging breach of contract, fraud, and violation of the Age Discrimination in Employment Act ("ADEA").

## SUMMARY JUDGMENT STANDARD

Under FED.R.CIV.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on

file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.*

After a properly made motion has been properly responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). RULE 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he judge's function is not himself to

---

4. The court notes that this statement is at odds with paragraph 16 of plaintiff's Complaint, in which he states that the new plan would result in no commission payment at all.

weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512; *see also Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745 n. 11, 103 S.Ct. 2161, 2171 n. 11, 76 L.Ed.2d 277 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510 (citations omitted); *accord Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513; *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir.1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988).

### ADEA

■ In a discrimination case based on an alleged violation of the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 *et seq.*), summary judgment should be granted only with caution, although cases exist in which it is appropriate. *Hudson v. Southern Ductile Casting Corp.,* 849 F.2d 1372, 1376 (11th Cir.1988). In a discrimination case, the plaintiff bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence. *Rollins v. TechSOUTH, Inc.,* 833 F.2d 1525, 1528 (11th Cir.1987).

■ A plaintiff may establish a prima facie case of age discrimination by three methods: (1) producing direct evidence of discriminatory intent; (2) meeting the test originally set out for Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); or (3) showing statistical proof of a pattern of discrimination. *Verbraeken v. Westinghouse Electric Corp.,* 881 F.2d 1041, 1045 (11th Cir.1989). Direct evidence consists of "[e]vidence, which if believed, proves existence of fact in issue *without inference or presumption*"; the fact that the evidence exists proves discrimination. *Rollins,* 833 F.2d at 1528, n. 6. Plaintiff in this case has offered neither direct evidence of discriminatory intent nor statistical proof of a pattern of discrimination. Plaintiff is therefore required to establish a prima facie case using the *McDonnell Douglas* test.

■ Plaintiff apparently contends that he was discriminated against in being offered the choice between lower compensation or a voluntary severance package, as was offered to everyone in an identified class of people whose wages could be expected to decline by at least ten percent under the new compensation scheme. The court notes that plaintiff has no standing to bring any challenge based on the Voluntary Big Ticket Severance Package, which he was offered but did not accept. Thus, any claim under the ADEA claiming disparate impact of the Voluntary Severance Package fails. However, assuming that plaintiff has standing to bring a challenge to the compensation reduction aspect of the choice Sears gave its employees, that action likewise fails.

Plaintiff has failed to produce either circumstantial or direct evidence of an intent to discriminate based on age, and his claim therefore fails under the *McDonnell Douglas* test currently used in the Eleventh Circuit in age discrimination cases. However, plaintiff is attempting to demonstrate disparate im-

pact, and the court now turns to that contention.

■ Plaintiff in the present case alleges that the choice between reduced compensation or the Voluntary Big Ticket Severance Package offered to any employee whose income might be affected by ten percent or more had a disproportionate impact on older workers, stating that everyone he knew to be affected "in any great way" was over 40. [Stutts Depo. II, p. 103]. He thus apparently claims disparate impact for older workers under the 1992 reduced compensation/severance package choice. However, he also stated that, other than the ages of those whom he personally knew to be affected, he had no knowledge that age had anything to do with the implementation of the change in compensation. [Stutts Depo. II, p. 103]. Most importantly, he has produced no evidence of any impact that the nationwide change in compensation has had on the age group protected by the ADEA. Plaintiff also stated that if he had been 38 years old and making the same amount of money that he was making, he would have been affected in the same way that he was. [Stutts Depo. II, p. 103].

The United States Supreme Court has explicitly stated that "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1705, 123 L.Ed.2d 338 (1993). The Court then added that in assessing disparate impact, as plaintiff alleges in this case, "we have never decided whether a disparate impact theory of liability is available under the ADEA …, and we need not do so here." *Id.* at ——, 113 S.Ct. at 1706. In his concurring opinion, Justice Kennedy noted that "there are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA." *Id.* at ——, 113 S.Ct. at 1710. Thus, plaintiff has from the outset a heavy burden of persuading the court to find the existence of liability under a theory that the Supreme Court has explicitly stated it has not yet accepted.[5]

In *Finnegan v. Trans World Airlines, Inc.,* 967 F.2d 1161 (7th Cir.1992), the Seventh Circuit confronted a situation similar to the present case. In bankruptcy, the airline attempted to reduce costs, in part by limiting vacations to four weeks per year, despite earlier allowances of up to seven weeks per year for the most senior employees. 967 F.2d at 1162. Although the impact of this effort was primarily on workers in the ADEA-protected age group, the court declined to find a violation of the ADEA, stating that in the context of a company trying to reduce personnel costs by reducing vacation time, disparate impact simply made no sense. *Id.* at 1163. It is also noteworthy that the same reduction package included an across-the-board 14 percent pay cut and the elimination of dental insurance, both of which the court pointed out were likely to affect older workers more harshly. *Id.* at 1164.

The *Finnegan* court stated that "[t]he thinking behind the concept of disparate impact is that if an employment practice bears disproportionately against the members of a protected group, the employer ought to be required to justify it." *Id.* at 1163 (citation omitted). The court also acknowledged that in the case before it, it would have reached the same result of a holding for the defendant if it had accepted the greater burden on older workers as prima facie evidence of discrimination and had then accepted the defendant's business justification as effective rebuttal. *Id.* at 1165. However, it refused to do so on the grounds that practices so "tenuously related to discrimination, so remote from the objectives of civil rights law, do not reach the prima facie threshold." *Id.* Thus, the disparate impact alone in such a context would not present a prima facie case.

This court finds the reasoning of the Seventh Circuit persuasive in the context of a company in economic difficulty. Although the Eleventh Circuit has not faced a situation analogous to the situation in *Finnegan* or the one currently before the court, it also has not rejected as a general proposition the possibility of a disparate-impact claim under the ADEA based on economic impact. *See, e.g., MacPherson v. University of Montevallo,*

---

5. The Court has likewise not excluded the possi- bility that the cause of action could exist.

922 F.2d 766, 770–71 (11th Cir.1991) (examining the claims of tenured University professors that newly hired professors were being paid more than faculty members hired under earlier contracts). It is important to note, however, that the challenge to the University's compensation scheme in *MacPherson* was in the context of an ongoing policy, which included hiring new, younger professors at allegedly higher salaries than the salaries of those who alleged the disparate impact; the present case is in the context of an overall reduction in compensation that defendants contend was a necessary cost-cutting tool to become competitive.

 This court finds the distinction between an ongoing compensation policy and choices offered as part of an across-the board reduction in wages of sufficient importance to distinguish *MacPherson* from the present case. Assuming *arguendo*, however, that a disparate-impact case in such a situation can be maintained in this Circuit, that in such a case the Eleventh Circuit has rejected the requirement of intent to discriminate required under the ADEA, *and* that plaintiff has established a prima facie case,[6] the inquiry still does not end there.

The employer can then "produc[e] evidence of a business justification for his employment practice," which means showing that the "challenged practice serves, in a significant way, the legitimate employment goals of the employer." *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 659, 109 S.Ct. 2115, 2126, 104 L.Ed.2d 733 (1989). Although the Supreme Court has required a review of the challenged practice so that spurious justifications could not protect discriminatory practices, there is nonetheless "no requirement that the challenged practice be 'essential' or 'indispensable' to the employer's business...." *Id.* If the employer is able to articulate such a reason, the burden shifts once again to the plaintiff to show that the articulated reason is a pretext for discrimination.

Once the employer has articulated a business justification for the challenged practice, the plaintiff may rebut the employer's justification by showing that other approaches to solving the problem would also serve the employer's legitimate interests without a similar undesirable effect. *Id.* (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975)). The employer's refusal to adopt plaintiff's proffered alternative could prove that the business justification asserted was merely pretext. *Wards Cove,* 490 U.S. at 659, 109 S.Ct. at 2126. The Court has made clear, however, that "any alternative practices which respondents offer up in this respect must be equally effective" in obtaining the employer's desired goals. *Id.* Because the courts are "generally less competent than employers to restructure business practice," the courts should be cautious in requiring that an employer adopt practices recommended by the plaintiff in such a context. *Id.* (quoting *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978)).

 The burden of persuasion remains at all times with the plaintiff claiming disparate impact. *Wards Cove,* 490 U.S. at 659, 109 S.Ct. at 2126. Such a requirement "conforms to the rule in disparate-treatment cases that the plaintiff bears the burden of disproving an employer's assertion that the adverse employment action or practice was based solely on a legitimate neutral consideration." *Id.* at 660, 109 S.Ct. at 2126 (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256–58, 101 S.Ct. 1089, 1095–96, 67 L.Ed.2d 207 (1981)). In *Wards Cove,* the Supreme Court acknowledged that some earlier decisions could be read as not leaving with the plaintiff such a burden, and clarified its position that references to an employer's burden of proof concerning a business justification defense should be understood to mean an employer's burden of production, not persuasion. *Wards Cove,* 490 U.S. at 660, 109 S.Ct. at 2126.

---

**6.** The court explicitly finds that plaintiff has failed to establish a prima facie case with regard to the reduced compensation plan implemented by Sears in 1992. As stated above, plaintiff has produced *no* evidence of *any* impact that the nationwide change in compensation had on employees in the age group protected by the ADEA.

In the present case, defendants have asserted Sears' need to improve its competitive position in the market as a legitimate business justification for making the compensation changes of which plaintiff complains. Defendants have produced substantial evidence of the business necessity justifying the new compensation program (and the voluntary severance package) at issue in this case. *See* Cook Affidavit ¶¶ 10–15. In response to defendants' asserted need to cut personnel costs, plaintiff contends that Sears "is doing things that makes it appear that they are in worse shape than they are," [Stutts Depo. II, p. 92], stating that he believes Sears could have "accomplished savings, similar to those resulting from the severance package ... by having been more competitive on pricing of items which would have maintained customer loyalty, increased sales volume, with resulting increased profits." [Stutts Affidavit ¶ 7].

■ Plaintiff offers no supporting evidence for his contention that a different pricing strategy would have been effective in the context of Sears' overall financial structure, including the wage structure. The Supreme Court stated in *Wards Cove* that a plaintiff must demonstrate that his proposed alternative is as effective as the challenged practice, and that " '[f]actors such as the cost or other burdens of proposed alternative selection devices are relevant in determining whether they would be equally as effective as the challenged practice in serving the employer's legitimate business goals.' " 490 U.S. at 661, 109 S.Ct. at 2127 (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 998, 108 S.Ct. 2777, 2790, 101 L.Ed.2d 827 (1988)).

Plaintiff has not carried this burden. A mere statement that an alternate practice would work, particularly in the absence of any specific information concerning the mechanics of the plan to show its feasibility, is insufficient to demonstrate that the proposed alternative would have been equally effective. In addition, plaintiff has presented no evidence to show that he or anyone else presented the proposed alternative to Sears and Sears refused to adopt it. The Supreme Court has stated that once plaintiff has established a prima facie case, the refusal to adopt an alternative "would belie a claim by

[an employer] that their incumbent practices are being employed for nondiscriminatory reasons." *Wards Cove*, 490 U.S. at 661, 109 S.Ct. at 2127. However, it is obvious that an employer can consider only plans of which it is aware, and plaintiff does not contend that at any point he presented his ideas to anyone in management or attempted to propose his idea as an alternative to the cost-cutting measures that Sears was proposing or undertaking. Without evidence that the plan was presented and rejected, and without evidence that the plan would have been as effective as the employer's plan, as required by *Albemarle Paper*, no inference can arise that Sears' practices were not employed for a legitimate reason as Sears claimed.

For these reasons, plaintiff's assertion of pretext in Sears' stated nondiscriminatory reason for offering the choice between reduced pay or a voluntary severance package must fail. He has not met the burden of showing that the articulated reason was anything other than Sears' actual reason for its action.

The Supreme Court has explicitly refused to state that a disparate impact analysis is applicable to claims under the ADEA. This court finds that such reticence is likely to be even greater in an overall reduction in wages for an identified class of employees in a company that has been concerned with its wage structure and declining profitability. Even if the Supreme Court had stated that such claims could be maintained under the ADEA, however, plaintiff has failed to prove a prima facie case on his disparate impact claim concerning the reduced compensation offered to Sears employees in 1992. Further, even assuming a prima facie case, he has not established that the reason articulated by Sears for the change in compensation was pretext. Sears is entitled to judgment on this issue as a matter of law.

## FRAUDULENT MISREPRESENTATION

Plaintiff alleges that Sears engaged in fraud through its agent, Gene Kendrick, in promising that plaintiff's base salary would not change and that changes in commission arrangements would never be to plaintiff's detriment, which Sears did not then fulfill.

[Complaint, ¶¶ 11–15]. Kendrick was the manager at the Florence, Alabama Sears store. [Stutts Affidavit ¶ 6]. Plaintiff contends that Kendrick told him in 1985 and again in 1989 that his salary would not decrease "forever and a day." [Stutts Affidavit ¶ 4]. Based on that statement, plaintiff says, he continued to work for Sears and did not seek other employment. [Stutts Affidavit ¶ 2].

Plaintiff also stated that he believed that Kendrick had the authority to convert his status from at-will employment to employment for a specified salary or term and relied on Kendrick's statement in the decision not to seek other employment. [Stutts Affidavit, ¶ 6]. Plaintiff contends that part of his consideration in taking the sales job was that Mr. Kendrick told him that he would be a "salaried protected individual" whose base pay was calculated to enable him to make as much money in sales as he had been making as a department manager. [Stutts Depo. p. 59–60]. Significantly, the promises that plaintiff alleges were made dealt with future performance on the part of Sears.

■ The elements of fraudulent misrepresentation are a duty to speak the truth; a false representation of present, material fact, made intentionally, recklessly, or innocently; action by the plaintiff on the false representation; and damages resulting from the false representation. *Salter v. Alfa Insurance Co.*, 561 So.2d 1050, 1053 (Ala.1990) (citing *Alfa Mutual Insurance Co. v. Northington*, 561 So.2d 1041, 1045–46 (Ala.1990)). *Northington* also makes clear the need for such reliance to be reasonable. *Northington*, 561 So.2d at 1045–46.

■ Plaintiff's employment status is a critical factor in determining whether he can prove the elements of fraudulent misrepresentation. Under current Alabama law, all employees are employees at will unless they meet one of the exceptions outlined in *Hoffman–La Roche, Inc. v. Campbell*, 512 So.2d 725 (Ala.1987): 1) a clear, unequivocal offer of lifetime employment or employment of a definite duration; 2) power in the hiring agent to bind the principal to such an employment contract; 3) substantial consideration provided by the employee for the contract apart from the services to be rendered. *Howard v. Wolff Broadcasting Corp.*, 611 So.2d 307, 309 (Ala.1992), *cert. den.* —— U.S. ——, 113 S.Ct. 1849, 123 L.Ed.2d 473 (1993).

■ The fact of employment at will raises a barrier to a fraud action by an employee because Alabama law also clearly establishes that in order to maintain a fraud action in an employment context, the plaintiff must show that he suffered actual injury. The element of actual injury is one that plaintiff cannot meet; since an employee at will may be terminated at any time for any reason or for no reason, he cannot show injury from the fact of changes in his employment, even if those changes are attributable to malicious action on the part of the employer. *Salter v. Alfa Insurance Co.*, 561 So.2d at 1053–54 (Ala.1990).

Plaintiff admits that he knew that he was an employee at will when he was hired, and that he understood the notice above his signature, which recited that he was an at-will employee and that only the president or vice president of the company could alter the at-will nature of his employment. [Stutts Depo. I, pp. 70–71; 73–74]. Plaintiff contends in this case, however, that subsequent representations by his manager led to reasonable reliance on a promise of something other than at-will employment.

Plaintiff contends that *Forbus v. Sears, Roebuck & Co.*, 958 F.2d 1036 (11th Cir.1992) *cert. den.* —— U.S. ——, 113 S.Ct. 412, 121 L.Ed.2d 336 (1993), addresses "the [exact] same issues as the present litigation," asserting "in the context of a severance package being offered by Sears, Roebuck and Company to individuals in the protected age group, that claims for misrepresentation and fraud are maintainable notwithstanding the prior status of such individuals as being employees at will." [Plaintiff's Brief in Opposition, p. 2].

However, *Forbus* presented a situation that is not before the court in the present case, and one which makes *Forbus* factually distinguishable: Sears entered into an arrangement with the retirees prior to their termination, obligating Sears to provide enhanced severance benefits in exchange for the retirees' agreement to execute releases

and waivers. *Id.* at 1042. The court explicitly noted that if Sears had fired them, "they would have had no cause of action for either breach of contract or fraud as a result of the termination of the employment relationship." *Id.*

■ Plaintiff declined the severance package offered to those who chose to leave Sears rather than accept reduced compensation, and as noted before, he thus has no standing to challenge the severance package. In addition, plaintiff cannot show injury in the change in compensation that he did accept, since he was an employee at will and he has failed to show that he was offered any "clear and unequivocal offer of lifetime employment or employment for a definite duration" as required by *Hoffman–La Roche* to convert his status from employee at will to employee for a definite contract term. Plaintiff contends that Kendrick's statement to him that his compensation would not change "forever and a day" constituted such an offer. However, plaintiff had already had changes in his rate of compensation, and the form that he signed in acknowledgement of those changes recited that changes were possible each January. In addition, plaintiff stated that he thought Kendrick meant only that any changes would be to plaintiff's benefit, not that there would be no further changes. Thus, according to plaintiff's own description of what he thought Kendrick meant, the alleged "offer" was not "clear and unequivocal" even in terms of the money involved.

■ Further, plaintiff could not reasonably have relied on the alleged promises made in 1985 and 1989 that his compensation arrangement would never be changed. Plaintiff stated in deposition [7] that he understood that he was still an employee at will at the time the deposition was taken, even after the events complained of in this case. [Stutts Depo. I, pp. 73–74]. Thus, plaintiff's own statements demonstrate that he did not believe that his status as an employee at will had changed. As *Salter* makes clear, plaintiff can therefore not maintain a claim of fraud in such a case, since he cannot demonstrate the necessary element of damage proximately caused by reliance on the alleged false representation.

The fact that plaintiff says that Sears breached its promise never to lower his salary also means that plaintiff is claiming promissory fraud. The Alabama Supreme Court has clearly stated that a promissory fraud claim is actionable only if substantial evidence exists that at the time of making the promise, the defendant had a present intent not to perform.[8] The court further stated that the failure to perform does not by itself show intent not to perform at the time the promise is made. *Howard v. Wolff Broadcasting*, 611 So.2d at 311. *Accord, Hearing Systems, Inc. v. Chandler*, 512 So.2d 84, 87 (Ala.1987) ("The failure to perform, alone, is not evidence of intent not to perform at the time the promise was made. If it were, a mere breach of contract would be tantamount to fraud." (citation omitted)).

■ Plaintiff stated in his deposition that the only evidence that he could present of defendants' intent to defraud was the fact that the promises were not kept. [Stutts Depo. II, p. 40]. That is inadequate under Alabama law to support such a fraud claim. Plaintiff in the present case has alleged no more than the failure to do what was promised, and Alabama law requires more than that as substantial evidence of intent not to perform. For these reasons, plaintiff's fraud

---

7. The court notes that plaintiff's deposition contradicts his affidavit, in which he states that he believed that Kendrick had the power to modify his contract and his at-will status.

8. The court notes that plaintiff changed his testimony on this point. In August, 1992, plaintiff testified that he believed that when the claimed promises were made, defendants intended at that point to perform. [Stutts Depo. I, pp. 84, 85]. Apparently, following his first deposition, plaintiff came to understand that this testimony would result in dismissal of his fraud claim: "I did come to understand that later." [Stutts Depo. II, p. 28]. In his resumed deposition, plaintiff testified that he had "misunderstood" the questions asked in August. [Stutts Depo. II, p. 6–7]. Although admitting that the questions had been "unambiguous" and "crystal clear" [Stutts Depo. II, pp. 21, 24], he nevertheless changed his testimony and stated that he believed that when the alleged promises were made, neither Sears nor Kendrick intended to perform. [Stutts Depo. II, p. 29–30].

claim fails and defendants are entitled to judgment as a matter of law.

## BREACH OF CONTRACT

■ Plaintiff claims that Sears, through its agent Gene Kendrick, breached its employment agreements with plaintiff. [Complaint, ¶¶ 7–10]. Absent proof that a contract for life or for a definite duration existed, however, plaintiff's acknowledged status as an employee at will means that his claim of breach of contract must fail. One of the defining elements of employment at will is that an employee at will may be terminated at any time, for any reason, whether that reason is good, bad, or even malicious. *Salter*, 561 So.2d at 1054. The right to terminate an employee whenever the employer chooses necessarily includes the right to change the conditions of employment, including salary. Plaintiff also acknowledged that he knew that Sears could and did unilaterally change his compensation.

Plaintiff stated that he understood that the discussions of compensation related to compensation under the plan currently in effect and did not discuss with Kendrick any compensation figures that concerned other plans. [Stutts Depo. II, p. 83]. He said that he did not believe that the compensation plans would not change, but rather that any changes would be to the benefit of the employees. [Stutts Depo. II, p. 77]. Plaintiff also stated that he read the sentence on each change-of-pay form reciting that the Premium Level was subject to change each January [Stutts Depo. I, p. 65], but said that he thought his opportunity to make the same amount of money would always be there if the Premium Level went up based on a change in sales volume. [Stutts Depo. I, p. 66]. Plaintiff stated that he understood that all changes in compensation levels were made on a unilateral basis by Sears, and that the company, not the employee, decided what changes to make. [Stutts Depo. II, p. 49–50].

To prove his claim of breach of contract, plaintiff must show that the employment-at-will doctrine no longer applied and that a new contract existed. The exceptions to employment at will as outlined in *Hoffman–La Roche* require that the clear and unequivocal offer be made by an agent with authority to bind the principal, and that the employee provide substantial consideration for the contract separate from the services to be provided. *Hoffman–La Roche*, 512 So.2d at 728. Here there was no clear and unequivocal offer of change-free compensation for life. Plaintiff's acknowledgement in his deposition that he understood that he was at all times an employee at will demonstrates his understanding of the paragraph directly above his signature on his initial employment agreement. *See* footnote 3 *supra*. That paragraph explicitly limited to the president or vice-president of the company the power to change his status. Thus, he could not reasonably have believed that the manager of the store, who was neither a vice-president nor a president, had the power to bind Sears, the principal.

■ Finally, plaintiff provided no consideration for the alleged new contract that made him more than an employee at will. Plaintiff has cited *Forbus* as being similar to the present case, stating that the consideration element is present because plaintiff "detrimentally relied on the statements and forwent other employment opportunities, and continued to work at Sears." [Stutts Affidavit ¶ 2]. However, plaintiff makes no representation that he had an offer to work anywhere else or that he actively refused other opportunities in order to continue at Sears. The Alabama Supreme Court has stated that the "services to be rendered" in continued employment are not adequate consideration in this context. *Hoffman–La Roche*, 512 So.2d at 728. As mentioned earlier, the plaintiffs in *Forbus* provided separate consideration by way of signing a new contract that included executing releases and waivers.[9]

9. The *Forbus* court reasoned as follows:
 Sears made a new arrangement with the Retirees prior to their termination in which Sears agreed to provide enhanced severance benefits in return for the Retirees' agreement to exe-

cute releases and waivers. It is this supplemental contract, offered by Sears and accepted by the Retirees, that the Retirees say they were fraudulently induced to enter and about which they claim misrepresentations were made and

Plaintiff has failed to show any act that removes him from the employee-at-will classification. For that reason, plaintiff's breach of contract claim fails, and defendants are entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, this court finds that no evidence exists on which a reasonable factfinder could find for the plaintiff on his claim of fraud, fraudulent misrepresentation, violation of the ADEA, or breach of contract.

facts suppressed. The Retirees' employment at will status that existed prior to this supplemental contract is only relevant to explain why the new arrangement was offered and accepted.

Therefore, the defendants are entitled to judgment as a matter of law on these claims, and defendants' Motion for Summary Judgment is due to be granted.